**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Axon Enterprise Incorporated, | No. CV-17-01632-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Vievu LLC, | |
| Defendant. | |

Plaintiff Axon Enterprise, Inc. alleges that its competitor, Defendant Vievu LLC, violated the Lanham Act by using deceptive advertising and fraudulently concealing defects in its products to obtain sales contracts. (Doc. 1.) Before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 14.) The motion is fully briefed, and the Court heard oral argument on November 14, 2017. (Docs. 23, 24, 48, 52, 53, 55.) For the following reasons, Defendant's motion is denied.

## **BACKGROUND**

This case is the third in which Plaintiff has complained about the manner in which Defendant advertises its products. On February 27, 2017, Plaintiff filed two lawsuits against Defendant. Plaintiff filed the first in California Superior Court and alleged violations of the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, and the California False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500

("California Action"). Plaintiff filed the second in Arizona Superior Court and alleged violations of the Arizona Consumer Fraud Act (ACFA), A.R.S. §§ 44-1521 et seq., and the Lanham Act, 15 U.S.C. §1125(a)(1)(B) ("Arizona Action").

On May 26, 2017, Plaintiff dismissed the California and Arizona actions and filed this case, which raises only a Lanham Act claim and implicates Defendant's representations in Arizona, California, Florida, and New York ("Federal Action"). (Doc. 1 ¶¶ 57-106.) Plaintiff's actions took place in a matter of minutes—the California Action was dismissed at 2:48 P.M., the Federal Action was filed at 2:52 P.M., and the Arizona Action was dismissed at 3:03 P.M.

All three actions share the same general allegation that Defendant made misrepresentations in the sale of its LE4 body-worn cameras. (Doc. 1 ¶ 1; Doc. 14-3 ¶ 1; Doc. 14-4 ¶ 1.) Specifically, Plaintiff alleges that Defendant misrepresented its camera captures "30 frames per second" and has a twelve hour battery life, when in actuality the camera captures fewer frames and has a shorter battery life. (Doc. 1 ¶ 1.) Plaintiff claims that Defendant induced city and county entities to purchase its cameras rather than Plaintiff's by underbidding and misrepresenting its product. (¶ 57.)

## **LEGAL STANDARD**

A successful Rule 12(b)(6) motion must show that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support such a theory.[1] *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Defendant contends that Plaintiff's voluntary dismissal of the Arizona Complaint operated as an adjudication on the merits of the Lanham Act claim under Arizona Rule of Civil Procedure 41(a)(1)(B), and therefore the Federal Complaint lacks a cognizable legal

---

[1] Defendant erroneously states that "[c]ourts will grant a motion to dismiss where the plaintiff is not entitled to relief under any set of facts that could be proved by the allegations of the complaint." (Doc. 14 at 6.) This standard derives from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which the Supreme Court abrogated in 2007 in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 561-63 (2007). It has been the rule for the past decade that a complaint which otherwise sets forth a cognizable legal theory will survive a motion to dismiss only where it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

theory because it is barred by res judicata.

Under Arizona's rules of civil procedure, a plaintiff may voluntarily dismiss an action "by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment," or "by order based on a stipulation of dismissal signed by all parties who have appeared." Ariz. R. Civ. P. 41(a)(1)(A). "Unless the notice or order states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed an action in any court based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Ariz. R. Civ. P. 41(a)(1)(B). This provision is substantially similar to Fed. R. Civ. P. 41(a), and commonly is referred to as the "two dismissal" rule. *Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1076 (9th Cir. 1999) (interpreting analogous federal rule). Defendant, as the party invoking the two dismissal rule, "bears the burden of proving applicability of the rule by a preponderance of the evidence."[2] *Randall v. Direct Buy, Inc.*, No. 4:09 CV 243 SNLJ, 2009 WL 4030533, at *3 (E.D. Mo. Nov. 19, 2009).

## **DISCUSSION**

It is undisputed that Plaintiff voluntarily dismissed two cases sharing the same general allegations that Defendant falsely advertised its LE4 body-worn cameras: first the California Action, followed by the Arizona Action.[3] It also is undisputed that the

---

[2] The Court has found no reported Arizona decision applying Arizona's two dismissal rule, but is guided by interpretations of the federal counterpart because Arizona has substantially adopted the Federal Rules of Civil Procedure. *Edwards v. Young*, 486 P.2d 181, 182 (Ariz. 1971) (observing that "great weight" is given to federal interpretations of the rules of civil procedure because Arizona has substantially adopted the federal rules). For ease, and unless otherwise relevant, the Court will refer to both rules interchangeably as "Rule 41" or the "two dismissal rule."

[3] Plaintiff argues that the two dismissal rule is inapplicable because, at the time it filed the Federal Action, "there was only one prior dismissal—the California matter." (Doc. 23 at 8.) Plaintiff effectively argues that the two dismissal rule applies only to serial litigation (i.e., suits which are filed after the earlier suits were dismissed), not to parallel litigation (i.e., suits which already were pending, even if for mere minutes, when one of the earlier suits was dismissed). Plaintiff, however, cites no cases interpreting Rule 41 in this manner, nor has the Court found any. To the contrary, the Fifth Circuit Court of Appeals rejected an identical argument in *Cabot Golf CL-PP 1, LLC v. Nixon Peabody*, LLP, 575 Fed. App'x 216 (5th Cir. 2014). The Court agrees with the Fifth Circuit that Plaintiff's interpretation is not supported by the plain language of Rule 41, which does not distinguish between parallel and serial litigation.

Lanham Act claim at issue in the Federal Action is identical to the Lanham Act claim that Plaintiff voluntarily dismissed in the Arizona Action. The dispositive question is whether the California Action was based on or included the same Lanham Act claim, such that the voluntary dismissal of the Arizona Action operated as an adjudication of the claim on the merits.

**I. Definition of "Same Claim" in Ariz. R. Civ. P. 41**

For purposes of Rule 41, "the Court considers whether Plaintiff's claims are the same as those in the related actions under the res judicata analysis." *Thomas v. Wells Fargo Bank*, N.A., C-13-02065 JSW, 2013 WL 5313458, at *2 (N.D. Cal. Sept. 23, 2013); *Abrahms v. Hard Drive Prods.*, No. C-12-01006 JCS, 2012 WL 5499853, at *3 n.3 (N.D. Cal. Nov. 13, 2012) ("the Ninth Circuit has analogized the Rule 41(a)(1)(B) two dismissal rule to the res judicata inquiry"). When determining the preclusive effect of federal court judgments, federal courts apply the "transactional test," under which claims are deemed to be the "same" if they arise out of the same transaction or occurrence and "could conveniently be tried together." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (quotations and citation omitted).

Federal courts look to state law, however, when determining the preclusive effect of a state court judgment. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). When determining the preclusive effect of a prior judgment, Arizona applies the "same evidence" test. *Phx. Newspapers, Inc. v. Dep't of Corr.*, 934 P.2d 801, 804 (Ariz. Ct. App. 1997); *see also Bishara v. U.S. Bank Nat'l Ass'n*, No. 1 CA-CV 16-0176, 2017 WL 3484503, at *2 (Ariz. Ct. App. Aug. 15, 2017); *Harris v. Ariz. Bd. of Regents*, No. CV-16-04029-PHX-DGC, 2017 WL 3704694, at *3 (D. Ariz. Aug. 28, 2017). Under this "rather restrictive test," a subsequent action is barred "[i]f no additional evidence is needed to prevail in the second action than that needed in the first." *Phx. Newspapers,* 934 P.2d at 804. "Two causes of action which arise out of the same transaction or occurrence are not the same for purposes of res judicata if proof of different or additional facts will be required to establish them." *E.C. Garcia and Co.,*

*Inc. v. Ariz. Dep't of Revenue*, 875 P.2d 169, 179 (Ariz. Ct. App. 1993). In this respect, "[t]he same evidence test is quite liberal and permits a plaintiff to avoid preclusion merely by posturing the same claim as a new legal theory, even if both theories rely on the same underlying occurrence." *Power Road-Williams Field LLC v. Gilbert*, 14 F. Supp. 3d 1304, 1309 (D. Ariz. 2014) (quotations and citation omitted).

Defendant argues that the federal "transactional test" should apply because Arizona has substantially adopted the Federal Rules of Civil Procedure. (Doc. 14; Doc. 52 at n.1.) For support, Defendant cites *Phillips v. O'Neil*, No. CV-17-0122-SA, 2017 WL 6503257, at *5 (Ariz. Dec. 20, 2017), a recent case in which the Arizona Supreme Court determined whether Arizona Rule of Evidence 408 prevented the State Bar from introducing a prior consent judgment in a disciplinary hearing to impeach Phillips' testimony if it differed from the facts contained in the judgment.[4] *Id.* at *1-2. The State Bar argued that the rule was inapplicable, citing to *Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183 (10th Cir. 1992), which held that Federal Rule of Evidence 408 did not bar introduction of evidence related to settlement discussions unless it involved the same claim. *Id.* at *5. Acknowledging that the Arizona rules of evidence are modeled after their federal counterpart, the Arizona Supreme Court looked to the federal rule and its interpretation by federal courts for guidance. The Arizona Supreme Court concluded that, because "federal courts, including, the United States Supreme Court, have applied the transactional analysis . . . when the definition of a 'claim' is legally significant" it was proper to apply that test to define "claim" for purposes of Arizona's rule. *Id.*

There are parallels between the analysis in *Phillips* and the question presented in this action, and the case supports Defendant's position that the federal transactional test

---

[4] Arizona Rule of Evidence 408 states in relevant part, "Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim."

- 5 -

should be used to define "same claim" in Ariz. R. Civ. P. 41. The Court concludes, however, that the same evidence test supplies the proper definition for two reasons. First, Arizona courts regularly apply the same evidence test when determining the preclusive effect of a prior Arizona judgment.[5] If the transactional test applied in the Rule 41 context, a more easily satisfied res judicata rule would apply to voluntary dismissals than to actual litigation of prior claims on the merits. Such a result is counterintuitive, and the Court finds no justification for differing treatment. Second, the federal res judicata analysis is more nuanced than Defendant's argument suggests. Federal courts do not apply the transactional test to all res judicata determinations. Instead, federal courts apply the transactional test to determine the res judicata effect of a prior federal judgment, but defer to state res judicata rules when evaluating the preclusive effect of a state court judgment. Thus, by applying Arizona's same evidence test, the Court *is* applying the federal res judicata rules, together with their nuances. The Court therefore will apply Arizona's res judicata rules because it is tasked with determining whether the voluntary dismissal of the Arizona Action has preclusive effect.

**II. The California and Arizona Actions Involved the Same Claim**

The California Action alleged violations of the UCL and FAL. The Court focuses on Plaintiff's FAL claim in determining whether its Lanham Act claim is subject to the two dismissal rule because Plaintiff's UCL claim is based on Defendant's alleged violation of the FAL.[6] *McCray v. Elations Co., LLC*, No. EDCV 13-0242 JGB, 2014 WL 12561600, at *11 (C.D. Cal. Dec. 8, 2014) (noting that a violation of the FAL is, by definition, also a violation of the UCL). To successfully bring a FAL claim, a plaintiff must demonstrate: (1) that defendant made an untrue or misleading statements pertaining to a proposed sale of goods; (2) that the statement was "made or disseminated before the

---

[5] Intermediate Arizona appeals courts have discussed the disadvantages of the same evidence test, *Phx. Newspapers, Inc.*, 934 P.2d at 804, and *Phillips* signals the Arizona Supreme Court's reluctance to expand its use beyond the res judicata context. But at present it remains the governing res judicata analysis in Arizona.

[6] Defendant likewise focuses on the evidence needed to support Plaintiff's FAL claim. (Doc. 52 at 8.) The Court will engage Defendant's argument on its terms.

public in [California]" or made or disseminated "from California before the public" in another state; and (3) that the speaker knows or "by exercise of reasonable care should know" that the statements are untrue or misleading. § 17500. Additionally, to establish standing to bring a FAL claim, a plaintiff must demonstrate that it has (4) suffered an economic injury and (5) "actually relied" on the misrepresentations at issue. *Bishop v. 7-Eleven*, 37 F. Supp. 3d 1058, 1064-65 (N.D. Cal. 2014).

In comparison, a false advertising claim under the Lanham Act requires proof of five elements: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence purchasing decisions; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, such as by direct diversion of sales from itself to the defendant. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

In reviewing the California Action, the Court finds that proof of Plaintiff's FAL claim would have required the same evidence needed to prove each element of its Lanham Act claim. First, the California Action alleged that Defendant misrepresented the LE4 camera's frame rate and battery life both on its website and in bids. (Doc. 14-3 ¶¶ 1, 19-21, 29, 31.) To demonstrate the falsity of these representations, Plaintiff "commercially acquired a new VIEVU LE4 camera . . . and retained an independent laboratory to perform general testing. During the testing process, this laboratory identified specific recording problems with the VIEVU LE4 camera." (¶ 43.) These problems included that the camera was dropping frames. (¶¶ 44-45.) In the context of Plaintiff's FAL claim, such evidence would have been offered to establish the existence of an untrue or misleading statement. This evidence also would be used to establish the existence of a false statement in a commercial advertisement for purposes of Plaintiff's Lanham Act claim. Indeed, Plaintiff makes identical allegations in its Lanham Act claim.

(Doc. 1 ¶¶ 23-24; Doc. 14-4 ¶¶ 1, 42-43.)

Next, Plaintiff alleged that it was injured because Defendant's misrepresentations actually deceived the government entities, diverting sales to Defendant. (Doc. 14-3 ¶¶ 1, 24-25, 32, 34-35, 94.) Specifically, Plaintiff alleged that Defendant "intended to and *did induce reliance* by its customers and prospective customers" through "material misrepresentations" about the quality of its product. (¶¶ 24-25.4) (emphasis added). Evidence of the same would have been offered in the California Action to establish Plaintiff's standing to bring a FAL claim, demonstrating Plaintiff's economic injury and actual reliance on the representations. The same evidence would be used to satisfy three Lanham Act elements: (1) that the statement actually deceived; (2) that the deception is material; and (3) that Plaintiff has been injured as a result of the statement. Plaintiff again relies on substantially similar allegations in its Lanham Act claim. (Doc. 1 ¶¶ 1, 32, 34-36; Doc. 14-4 ¶¶ 27, 51, 59, 69.)

Finally, the California Action alleges that Defendant, a Washington company, disseminated misrepresentations in California directly, and nationwide through its website. (Doc. 14-3 ¶¶ 1, 3, 29.) For Plaintiff's FAL claim, evidence of the same would have been offered to establish that statements were made in California. Plaintiff's Lanham Act claim is based on the same allegations regarding direct misrepresentations to bid requests and through Defendant's website. (Doc. 1 ¶¶ 112-13; Doc. 14-4 ¶¶ 19-21, 66-68.) The same evidence therefore would be used to meet the Lanham Act's interstate commerce element. *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir. 1983) ("Advertising that affects interstate commerce and solicitation of sales across state line . . . is . . . commerce within the meaning of Lanham Act."); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 n.3 (9th Cir. 2011) (noting that meeting the interstate commerce element is "virtually automatic for websites").

Plaintiff nonetheless argues that the California Action did not involve the same Lanham Act claim because in this case it is "required to present additional evidence concerning [Phoenix, New York, and Florida] to prove its allegations and damages as to

those entities." (Doc. 53 at 6.) Plaintiff asserts that "[t]his is not simply a matter of duplicative or superfluous evidence, but the additional evidence is necessary for Plaintiff to prove each element of the Lanham Act claim and resulting damages in the form of direct diversion of sales relating to each of those entities." (*Id.*) This argument is unpersuasive.

Injury, not damages, is a requisite element of a false advertising claim under the Lanham Act. In order to prove injury by diversion of sales a plaintiff need not prove every sale diverted by the false advertising competitor. Instead, there must only be "an evidentiary showing of *some* diverted sales from which more can reasonably be extrapolated." 5 McCarthy on Trademarks and Unfair Competition § 27:42 (5th ed.) (emphasis added). The allegations regarding the diversion of sales in the California Action, if proven, are sufficient for a court to reasonably extrapolate the existence of more diverted sales. Proof of diversion of sales from Arizona, New York, and Florida "goes to the quantum of damages and not the very right to recover." *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958); *see e.g.*, *Warner–Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000) ("[A] plaintiff seeking damages under [the Lanham Act] must establish customer reliance but need not quantify loss of sales as that goes to the measure of damages, not plaintiff's cause of action.").

For these reasons the Court finds that Plaintiff's California Action was based on or included the same Lanham Act claim as the Arizona Action and, therefore, Plaintiff has voluntarily dismissed the same claim twice.[7] Nonetheless, the Court declines to apply the two-dismissal rule because strict application, and the harsh result that would follow, is inconsistent with the purpose of Rule 41 and the overarching policy behind the Arizona and Federal Rules of Civil Procedure.

**III. Dismissal Does Not Advance the Policy Behind Rule 41**

The purpose behind the two dismissal rule is to "prevent delays and harassment

---

[7] Because the Court concludes that Plaintiff's California Action was based on or included the same Lanham Act claim under the same evidence test, the Court would reach the same result under the more easily-satisfied transactional test.

- 9 -

caused by plaintiffs securing numerous dismissals without prejudice." 9 C. Wright & A. Miller, Federal Practice & Procedure § 2368 (3d ed.). "Where the purpose behind the 'two dismissal' exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant" some courts have elected not to apply the rule strictly. *Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1017 (2d Cir. 1976); *see also Priestly v. Comrie*, No. 07 CV 1361 (HB), 2007 WL 4208592, at *4 (S.D.N.Y. Nov. 27, 2007). In *Poloron*, for example, the Second Circuit held that the two dismissal rule is inapplicable where a prior dismissal is by stipulation, knowingly consented to by all parties. 534 F.2d at 1018. Although Rule 41(a)(1) makes no distinction "by its literal terms" between a prior dismissal by notice and one by stipulation, the court held that a distinction should be made between a unilateral dismissal by the plaintiff and one that results from a mutual agreement of all the parties. *Id.* at 1017. The court reasoned that the rule need not be applied in such a situation because a stipulated dismissal is not likely to lead to the types of repeated, harassing, unilateral dismissals that Rule 41 was designed to avoid. *Id.*

For its part, the Ninth Circuit has cautioned that, "[t]his holding, when followed, has been limited to its facts and does not preclude application of the bar where the voluntary dismissal is unilateral." *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 727 (9th Cir. 1991). For example, the plaintiff in *Lake* filed an initial complaint against a series of defendants, including Transcontinental. *Id.* at 725. Within days of filing the complaint, the plaintiff voluntary dismissed the complaint as to all defendants, and then immediately refiled an identical complaint. *Id.* Thereafter, the plaintiff voluntarily dismissed all the claims against Transcontinental, now for the second time. *Id.* The plaintiff then sought leave to add Transcontinental as a party to the suit. *Id.* The district court denied this request and granted Transcontinental's motion to dismiss pursuant to the two dismissal rule. *Id.* The Ninth Circuit affirmed, noting that plaintiff's dismissals fell "squarely within the language of the rule." *Id.* at 727.

Nonetheless, citing *Poloron* favorably, the Ninth Circuit has recognized that "in certain limited circumstances, [Rule 41] will not be literally applied." *Id.* In fact, in *TWC Special Credits v. Fishing Vessel CHLOE Z*, an unpublished disposition from 2000, the Ninth Circuit elected not to apply the rule where the prior dismissals were by private agreement but not by formal stipulation. 238 F.3d 431 (Table), 2000 WL 1277922, at *2 (9th Cir. Oct. 3, 2000). There, "the record indicate[d] that the [prior] dismissal was preceded by discussions between the parties" in which they agreed to consolidate the cases. *Id.* The Court opined that, "although the [prior] dismissal was not formally 'stipulated,' it was not unilateral as all parties tacitly agreed to the dismissal in favor of litigating the action in [one forum]. Also, there [was] no evidence that the filings and dismissals were part of a strategy to harass." *Id.* Though under Circuit Rule 36-3 unpublished decisions issued before January 1, 2007 do not serve as precedent and may be cited only in limited circumstances, *TWC Special Credits* nonetheless suggests that the Ninth Circuit is willing in special cases to look at the circumstances behind the underlying dismissals to determine whether strict application of Rule 41 furthers its intended purpose.

Here, Plaintiff's maneuvers fall somewhere between the unilateral actions seen in *Lake* and the stipulated voluntary dismissal in *Poloron*. For example, prior to dismissing the California Action, counsel for the parties exchanged emails in which Defendant's counsel provided potential grounds for its contemplated demurrer. (Doc. 23-3.) In particular, Defendant noted that allegations regarding its representations outside the state were not actionable under California law. (*Id.*) Thereafter, the parties met and conferred, and Plaintiff provided Defendant with a draft version of its motion for voluntary dismissal and requested its approval. (Doc. 23-6.) Defendant responded affirmatively. (*Id.*)

When faced with similar factual circumstances, other courts have declined to apply the two dismissal rule. *See e.g.*, *Sheet Metal Workers' Nat. Pension Fund Bd. of Trs. v. Courtad, Inc.*, No. 5:12-cv-2738, 2013 WL 3893556, at *5 (N.D. Ohio July 26,

2013) ("not only is there no evidence that the [plaintiff] dismissed either of the previous actions out of the desire to harass defendant, the evidence actually shows, to the contrary that the dismissal occurred after the parties conferred . . . [therefore] this would not be a proper occasion to invoke the 'two dismissal' rule"); *Ater ex rel. Ater v. Follrod*, 238 F. Supp. 2d 928, 953 (S.D. Ohio 2002) ("Even though the Court has found no basis for believing that the parties reached an "agreement" or that there was an "implied understanding" concerning whether dismissal . . . would trigger application of the [two] dismissal rule, the fact remains that Plaintiffs' counsel did confer with Defendants' counsel prior to dismissing the claim. . . . [T]he dismissals were not completely unilateral, and there is no evidence in the record that Plaintiffs acted with the intent of harassing Defendants," therefore the Court found the two dismissal rule did not apply); *Island Stevedoring, Inc. v. Barge CCBI*, 129 F.R.D. 430, 432 (D.P.R. 1990) (although the parties did not file a formal stipulation, the record indicated that the first dismissal resulted from "negotiations and a consent agreement among the parties," so the "two dismissal" rule did not apply); *But cf. Bala v. Bank of Am., N.A.*, No. CV 15-3305-MWF, 2015 WL 4886043, at *3-4 (C.D. Cal. Aug. 14, 2015).

Plaintiff's prior dismissals were neither purely unilateral nor done for an improper purpose. There appears to have been a tacit agreement or understanding between counsel before Plaintiff voluntarily dismissed its prior actions. Moreover, even if there were no such agreement, given the near simultaneous dismissal of the state actions and filing of the Federal Action, the Court finds that Plaintiff intended, albeit clumsily, to consolidate its claims in a single forum, and not to harass Defendant. Civil litigation in federal court "is not a game of 'gotcha.'" *Loomis v. City of Puyallup Police Dep't*, No. C02-5417-RJB, 2005 WL 1036445, at *8 (W.D. Wash. May 3, 2005). Instead, both the Arizona and Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Ariz. R. Civ. P. 1; Fed. R. Civ. P. 1. Although Plaintiff has twice voluntarily dismissed actions based on or involving the same Lanham Act

claim alleged here, the Court finds strict application of Rule 41 would not further its purposes, nor would such a harsh result comport with the spirit and intent of the rules of civil procedure. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 14) is **DENIED**.

Dated this 5th day of January, 2018.

Douglas L. Rayes
United States District Judge